IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:13-CR-118-L** |
| | § | |
| **JOSE A. RODRIGUEZ**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Jose A. Rodriguez's ("Rodriguez" or "Defendant") Motion to Suppress Evidence—Confession With Authorities ("Motion"), filed on June 18, 2013. After careful consideration of the Motion, response, record, and applicable law, the court **denies** the Motion.

**I.  Background**

**A.  Procedural Background**

Defendant is charged in a four-count superseding Indictment with one count of Theft of Government Funds, in violation of 18 U.S.C. § 641, and three counts of making False Statements, in violation of 42 U.S.C. § 408(a)(3). Specifically, Defendant is charged with embezzling, stealing, and converting to his use, Retirement Insurance Benefits the Social Security Administration ("SSA") paid to him as a representative payee for Mr. Fernando Loya ("Loya") and for making false, sworn, written statements to the SSA regarding Loya's benefits.

On June 21, 2013, Defendant filed the Motion, requesting the court to "hold a hearing on the admissibility of the Defendant's written and oral statements, and upon hearing, suppress the statements and not allow them into testimony." Def.'s Mot. to Suppress 1. Specifically, Defendant

moves the court to suppress a signed statement he gave to federal investigators prior to the Indictment and "any" oral statements he gave subsequent to the Indictment on the basis that they were obtained in violation of *Miranda v. Arizona*, 348 U.S. 436 (1966), and that they were coerced. Defendant concedes that he was not in custody at the time he made the statements to investigators; nevertheless, he contends that he was interrogated prior to the administration of *Miranda* warnings and that any statements made as a result of this interrogation are inadmissible as evidence.

In response, the United States of America ("the government") requests that the court deny the Motion. The government does not dispute that Defendant was given no *Miranda* warnings prior to his interviews with federal investigators. The government, however, argues that the investigators were not required to give Defendant *Miranda* warnings because such warnings are only required when a suspect is both in custody and under interrogation. As Defendant concedes that he was not in custody, the government argues, his contention that he was entitled to *Miranda* warnings fails as a matter of law. Further, the government asserts that the environment in which Defendant gave statements were not coercive as a matter of law and that the totality of the circumstances demonstrates the voluntariness of his confessions. Finally, the government states that it is unaware of any statements made by Defendant subsequent to the Indictment and that even if such statements existed, it does not intend to use any them against Defendant.

B. **Factual Background**

As Defendant does not set forth his own set of facts or allegations in his Motion, the following account is taken from the Government's Response to Defendant's Motion to Suppress, which has not been disputed or refuted by Defendant. Beginning in 1989, Loya began receiving Title II Retirement Insurance Benefits. The Social Security Administration ("SSA") appointed Defendant

as Loya's payee. On September 2, 2011, the SSA instructed Defendant to bring Loya and his identification information to its office in Dallas, Texas. On that date, Defendant arrived to the office without Loya and informed the SSA that Loya was currently living in Mexico and was unable to appear at the time and date requested. On October 27, 2011, Defendant called the SSA and reported that Loya had passed away in Mexico on September 15, 2011. The matter was referred to the SSA's Office of Inspector General ("OIG") for investigation, and Special Agent Roger Coursey ("SA Coursey") was assigned to investigate the matter.

SA Coursey's initial investigation led him to believe that Defendant should be considered the subject of the investigation. On December 19, 2011, he, along with Special Agent Corwin Rattler ("SA Rattler") went to Defendant's apartment, knocked on the door, and identified themselves as special agents with the OIG. They inquired whether they could ask Defendant questions, "if he had the time," as to the social security benefits he was receiving on behalf of Loya. The government states that Defendant "was advised that the nature of the interview was voluntary, but he was not given *Miranda* warnings." Gov't Resp. 2. Defendant agreed to answer questions and allowed both agents to enter his apartment. Defendant and his wife sat with both agents in the living room during the interview.

Defendant told the agents that he last saw Loya three to four months prior to his death and would drive down to Mexico to deliver his money to him. According to the government, after SA Coursey confronted Defendant with information he had in his possession and with conflicts in Defendant's statements, Defendant "broke down and conceded that the last time he traveled to Mexico to give Loya his benefits was in 1992 or 1994," and that the last time he mailed any money to Loya was in 1997. *Id.* at 3. Defendant also admitted that he did not know how or when Loya

**Memorandum Opinion and Order - Page 3**

died, but he believed it may have been in 1995. According to the government, Defendant "became emotional and cried once he admitted his conduct." The government states that following these statements, SA Coursey asked Defendant whether he would like to provide a written statement. SA Coursey told Defendant that Defendant could write the statement himself, that Defendant could dictate it to SA Coursey, or that SA Coursey could write the statement based on what was said during the interview and Defendant could make any corrections or additions. Defendant elected to have SA Coursey write his statement, which is attached to the government's Response. The written statement states that it was freely and voluntarily given and bears Defendant's initials at the beginning and end of each page. Further, the statement indicates that it was signed and sworn to by Defendant and witnessed by Defendant's wife and SA Rattler. According to the government, after taking Defendant's statement, SA Coursey advised Defendant that the case would be presented for federal prosecution and that he could not predict whether the case would be pursued criminally. Defendant was not placed under arrest. SA Coursey left a business card with Defendant in case he needed to contact him, and both agents left the apartment together.

On March 19, 2012, approximately three months after the initial interview, Defendant and his wife made an unannounced visit to the OIG office in Dallas and requested to speak with SA Coursey. Because the visit was not scheduled and SA Rattler had not yet arrived in the office, Assistant Special Agent-in-Charge Diane Stowe sat in on the meeting. When SA Rattler arrived shortly before the interview began, he also sat in on the meeting, which took place in a conference room in the office. Defendant's wife was also present for the meeting and sat beside her husband. The government states that Defendant was advised that the meeting was voluntary, and, as such, no *Miranda* warnings were given. Defendant asked to be updated on the status of the case and offered

**Memorandum Opinion and Order - Page 4**

to provide any additional information that was requested. He reiterated that neither he nor his family had any contact with Loya since the mid-1990s and stated that he had visited Mexico twice since then to learn of any details of Loya's death but had been unsuccessful. According to the government, Defendant again became emotional and apologized for his wrongdoing. No written statement was taken from Defendant at this time, and he and his wife left the office together after the interview concluded.

On April 2, 2013, Defendant was indicted in this matter and arrested on April 5, 2013. The government states that he was not interrogated and made no statements following his arrest.

## II. Relevant Legal Standards

### A. Legal Standard for *Miranda* Warnings

Under *Miranda*, "to preserve the privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retained or appointed counsel." *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006) (citing *Miranda*, 384 U.S. at 444). Such *Miranda* warnings must be administered before "custodial interrogations." *United States v. Chavira*, 614 F.3d 127, 133 (5th Cir. 2010) (quoting *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc)) (footnote omitted).

A suspect is "in custody" for *Miranda* purposes "'when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *United Bengivenga*, 845 F.2d at 595). A determination of whether a defendant is "in custody" for purposes of *Miranda* depends

on the "totality of circumstances." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "'Two discrete inquires are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.'" *Id.* (quoting *J.D.B. v. N. Carolina*, --- U.S. ---, 131 S. Ct. 2394, 2402 (2011)). The reasonable person through whom the court views the situation "'"must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."'" *Id.* (quoting *Bengivenga*, 845 F.2d at 596).

Custodial statements are not protected by *Miranda* unless they are made as the result of "interrogation" by law enforcement. An "interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Chavira*, 614 F.3d at 133 n.8 (quoting *Rhode Island v. Innis*, 446 U.S. 29 (1980)) (internal quotation marks omitted).

Generally, statements obtained during custodial interrogation when the defendant was not provided adequate *Miranda* warnings are inadmissible. *Courtney*, 463 F.3d at 336 (citing *Missouri v. Seibert*, 542 U.S. 600, 608 (2004)). "But a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his *Miranda* rights." *Id.* (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Accordingly, such statements may be admissible as evidence against the defendant at trial.

### B.     Legal Standard for Involuntary Confessions

Federal courts have recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and

the Due Process Clause of the Fourteenth Amendment. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). As Defendant invokes both the Fifth and Fourteenth Amendments, this opinion addresses the voluntariness of his confessions under both standards. "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)).

In determining the voluntariness of a confession or statement under the Fifth Amendment, courts focus on whether defendant was first warned of his *Miranda* rights and voluntarily and intelligently waived those rights. For a defendant's waiver of his *Miranda* rights to be effective, it must be voluntary. This inquiry has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005) (quoting *United States v. Andrews*, 22 F.3d 1328, 1337 (5th Cir. 1994)).

Even if *Miranda* warnings were given and the government showed that an effective *Miranda* waiver was made, the government must show that the confession was voluntary under the due process standard. Under the due process test, a court must evaluate "'whether a defendant's will was [overwhelmed]' by the circumstances surrounding the giving of a confession." *Dickerson*, 530 U.S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "This inquiry 'takes into consideration the totality of all the surrounding circumstances—both the characteristics of the

accused and the details of the interrogation.'" *United States v. Turner*, 674 F.3d 420, 432 (5th Cir. 2012) (quoting *Dickerson*, 530 U.S. at 434). "'Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.'" *Id.* at 432-33 (quoting *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997)).

**III.    Analysis**

    **A.    <u>Whether Defendant Was Entitled to *Miranda* Warnings</u>**

Defendant correctly concedes that he was not "in custody" during either interview. The government is correct that *Miranda* protections do not attach unless both the custody and interrogation prongs are satisfied. Because Defendant was not "in custody" for the purposes of *Miranda*, he was not entitled to *Miranda* warnings as a matter of law.

    1.    *The First Interview*

The first interview took place in Defendant's apartment. That the interrogation took place in Defendant's home may weigh against a finding that he was "in custody" for *Miranda* purposes. This factor alone, however, is not dispositive, and the court must still make an inquiry into the remaining circumstances surrounding the interrogation. *See Cavazos*, 66 F.3d at 194 ("In arguing that *Miranda* warnings were not necessary, the Government relies on the fact that [the defendant] was interrogated in his own home, a fact which, taken alone, lessens the likelihood of coercion. *Miranda*, however, does not allow for a simple in-home vs. out-of-home dichotomic analysis.") (citation omitted). Here, it is clear that, based on the totality of the circumstances, the first interview was noncustodial. Two agents, SA Coursey and SA Rattler, knocked on Defendant's door and identified themselves as special agents with OIG. According to the government, the agents inquired

of Defendant, "if he had the time," could they ask him some questions about the social security benefits he was receiving on behalf of Loya. Defendant agreed to speak with them and voluntarily consented to their entry into his home. He was not at any point handcuffed, restrained, arrested, or taken from his home; nor was his residence searched. The agents advised him that the nature of the interview was voluntary, and he spoke to them of his own volition. There is no indication that, at any time during the interview, Defendant asked the agents to leave or that the agents informed him he was not free to leave or end the interview. Defendant has presented no information to suggest that an interrogation in one's own home under these circumstances "would lead a reasonable person to believe that he was not at liberty to terminate the interrogation and leave." *Id.* (citation and internal quotation marks omitted). Accordingly, the court holds that Defendant was not "in custody" during this interview, and, as such, the agents were not required to advise him of his *Miranda* rights before taking his written statement.

Defendant asserts that, because he was interrogated without being given *Miranda* warnings, any statements made as a result of this interrogation are inadmissible. Interrogation alone, without being "in custody," however, is insufficient to invoke the protections of *Miranda*. As federal case law makes clear, *Miranda* warnings are only required when a suspect is both in custody *and* under interrogation. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995) ("*Miranda* warnings are due only when a suspect interrogated by the police is 'in custody.'"). Thus, because the facts presented to the court indicate that the in-home interrogation was noncustodial in nature, the agents were not required to "Mirandize" Defendant. *See United States v. Pofahl*, 990 F.2d 1456, 1487 (5th Cir. 1993) (determining that defendant was not in custody during an interrogation because he voluntarily answered questions in his home, was not arrested, and was not restrained); *United States v. Harrell*,

**Memorandum Opinion and Order - Page 9**

894 F.2d 120, 126 (5th Cir. 1990) ("The home interrogation was noncustodial and thus did not require *Miranda* protection."). This remains true even if it was clear from the circumstances that Defendant was the subject or focus of the investigation at the time of the interview; if the agents should have known that the questions they asked were reasonably likely to elicit an incriminating response from him; or if there were coercive aspects to the interview. *See Oregon v. Mathiason*, 429 U.S 492, 495 (1977) ("[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because . . . the questioned person is one whom the police suspect."); *Beckwith v. United States*, 425 U.S. 341, 345-47 (1976) (holding that statements made by taxpayer during an interview with Internal Revenue agents at his home were admissible in the ensuing criminal tax fraud prosecution even though taxpayer was the "focus" of the investigation when interviewed because he was not "in custody" for *Miranda* purposes). Therefore, Defendant's written statement was not obtained in violation of *Miranda*, and he is not entitled to suppression of this statement on this ground.

        2.      *The Second Interview*

Furthermore, the totality of the circumstances also suggests that Defendant was not "in custody" during the second interview, and, as such, he was not entitled to *Miranda* warnings before this interview either. Defendant showed up voluntarily and unannounced to the OIG's Dallas office

**Memorandum Opinion and Order - Page 10**

with his wife and requested to speak specifically with SA Coursey. Although Defendant initiated this interview, he was advised that the meeting was voluntary. Defendant asked to be updated on the status of the case and offered to provide any additional information if it was requested. No written statement was taken from Defendant during this interview, and he and his wife left the office together after the interview concluded. There is no suggestion by Defendant that the agents told him he had to cooperate with them or grant them another interview; nor is there any allegation that the agents told him that he was not free to leave or end the interview. Moreover, that Defendant appeared on his own at the OIG's office militates against any inference of intimidation. On the facts presented here, this interview was also noncustodial in nature because a reasonable person under the same circumstances would not have believed his freedom was restricted to the degree associated with a formal arrest. *Cf. Mathiason*, 239 U.S. at 495 (holding that a suspect was not "in custody" during an interview at police station, even though the officer requested the meeting and advised defendant that he wanted to discuss a burglary that he believed the defendant was involved in, because the suspect voluntarily came to the station, was informed he was not under arrest and at the end of the half-hour interview left the station without hindrance). Therefore, any incriminating statements made by Defendant during this interview were not obtained in violation of *Miranda*, and he is not entitled to suppression of them on this ground.

Finally, with respect to "any" statements that may have been made by the Defendant subsequent to his indictment, the government states that it is not aware of any such statements, and that even if they did exist it does not intend to use them against Defendant. Because Defendant has not identified the statements to which he refers and the government will not use such statements, the

**Memorandum Opinion and Order - Page 11**

court determines that this issue is moot. The court therefore denies Defendant's request to suppress any statements made by him subsequent to his indictment.

        B.        **<u>Whether Defendant's Statements Were Involuntary</u>**

Because the statements made by Defendant were not obtained in violation of *Miranda*, his claim that his statements are involuntary under the Fifth Amendment also fails. That Defendant was not entitled to *Miranda* warnings, however, does not end the voluntariness inquiry, as his confession could still be involuntary under the due process clause. *See Dickerson*, 530 U.S. at 444 ("The requirement that *Miranda* warnings be given does not, of course, dispense with the voluntariness inquiry."). In other words, even where there has been no *Miranda* violation, a confession must still be voluntary under the Fourteenth Amendment's due process clause to be admissible. *See Nenno v. Quarterman*, 489 F.3d 214, 217 (5th Cir. 2007) ("It is true, as [petitioner] argues, that a confession might in some circumstances be coerced from a person not in custody. But the question then is one of fundamental fairness under the due process clause.").

In determining whether his confession was voluntary and, thus, in accordance with the requirements of due process, the court takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. *Dickerson*, 530 U.S. at 434. As there are no characteristics regarding the accused for the court to specially consider, such as Defendant's age, intelligence or education, *see Scknecklot*, 412 U.S. at 226, it looks to the details of the interrogation in its totality-of-the-circumstances analysis. The totality of the circumstances suggests that both of Defendant's statements were voluntary. Defendant was aware that he was speaking with special agents investigating his receipt of Loya's social security benefits, he was interviewed in his home with his wife present during the first interview, and he

**Memorandum Opinion and Order - Page 12**

sought out the agents before making additional incriminating statements during the second interview. Defendant does not allege that the agents' conduct was coercive. For instance, there is no allegation that the agents used physical force or made promises, inducements, or threats during either interview. Furthermore, Defendant does not explain how the agents' conduct caused him to make an involuntary confession. As Defendant fails to set forth specific allegations of official overreaching or coercive conduct on the agents' part during either interview, and he fails to establish any link between such conduct and his confession, any claim that his confessions or statements are involuntary under the Fourteenth Amendment necessarily fails. *See Turner*, 674 F.3d at 432 ("'Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession.'") (citation omitted); *United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993) ("A confession is voluntary in the absence of official overreaching, in the form of either direct coercion or subtle psychological persuasion.") (citation omitted). Accordingly, the court also denies Defendant's Motion with respect to this claim.

### IV.   Conclusion

For the reasons herein stated, the court **determines** that Defendant was not entitled to *Miranda* warnings before giving the challenged statements to federal investigators and that these statements were not involuntary. Defendant therefore is not entitled to suppression of these statements, and the government may use them as evidence against him at trial. Accordingly, the court **denies** Defendant's Motion.

**It is so ordered** this 24th day of July 2013.

                                                                Sam A. Lindsay
                                                                United States District Judge